**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

AFAB INDUSTRIAL SERVICES, INC.,

Plaintiff,

-against-

LITTLE CHELSEA, INC., d/b/a CHELSEA EXCLUSIVE,

Defendant.

LITTLE CHELSEA, INC., d/b/a CHELSEA EXCLUSIVE,

Third-Party Plaintiff,

-against-

VDAN SALES, INC.,

Third-Party Defendant.

---------------------------------------------------------------x

Case No.: 23-cv-03095-MMG

**DEFENDANT LITTLE CHELSEA INC.'S MOTION FOR COSTS AND FEES**

Defendant Little Chelsea, Inc. ("LCI"), the prevailing party in this action, respectfully moves this Court for an award of reasonable attorney's fees and costs pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). This is an "exceptional case" warranting such an award. LCI seeks an award of attorney's fees in the amount of **$50,437.51** and costs in the amount of **$3191.62**, as detailed in the supporting declaration of counsel and the accompanying exhibits.

## I. PRELIMINARY STATEMENT

Defendant LCI, having fully prevailed at a bench trial against Plaintiff AFAB Industrial Services, Inc.'s ("AFAB") trademark infringement claims, now moves for an award of attorney's fees and costs. As this Court's Opinion and Order of March 2, 2026, makes clear, this is precisely

the type of "exceptional case" for which the Lanham Act's fee-shifting provision was designed. This case stands out from others because of the substantive weakness of AFAB's litigating position and the unreasonable manner in which it pursued this litigation.

AFAB brought and maintained this suit based on a theory of counterfeiting that the Court found was unsupported by credible evidence. The Court determined that AFAB's sole witness on counterfeiting, its owner Everett Farr, was not a credible witness on several key points, including his claims regarding AFAB's anti-counterfeiting measures and his disingenuous testimony about the cessation of "Maximum Impact" manufacturing. AFAB failed to produce a single piece of credible evidence to establish the features of a "genuine" product from the relevant time period, yet forced LCI to defend itself through a full trial. An award of fees is necessary to compensate LCI and to deter future litigants from bringing baseless claims founded on non-credible testimony and a failure of proof.

## II. <u>PROCEDURAL BACKGROUND</u>

AFAB initiated this action on April 13, 2023, alleging a single count of trademark infringement, counterfeiting, and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). The matter proceeded through discovery and pretrial motions to a four-day bench trial before this Court, which took place from February 9, 2026, to February 12, 2026.

On March 2, 2026, the Court issued a comprehensive Opinion and Order detailing its findings of fact and conclusions of law. The Court found that AFAB failed to carry its burden of proving by a preponderance of the evidence that the products at issue were counterfeit or that LCI sold them. Accordingly, the Court entered judgment in favor of LCI, dismissing all of AFAB's claims.

As the party in whose favor judgment was entered, LCI is the "prevailing party" for purposes of the Lanham Act's fee-shifting provision. A party prevails when it achieves a "material alteration of the legal relationship of the parties that is judicially sanctioned.". The entry of final judgment on the merits dismissing all of Plaintiff's claims constitutes just such a material alteration, confirming LCI's status as the prevailing party. Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B), this motion is timely filed within 14 days of the entry of judgment.

## III. LEGAL STANDARD

Section 35(a) of the Lanham Act provides that a "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In *Sleepy's LLC v. Select Comfort Wholesale Corp.*, the Second Circuit adopted the standard articulated by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), for determining whether a case is "exceptional" under the Lanham Act.

Under this framework, an "exceptional case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." District courts are afforded "wide latitude" to assess whether a case is exceptional on a case-by-case basis, considering the "totality of the circumstances."

In exercising this discretion, courts may consider a variety of non-exclusive factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." An action is considered frivolous if its factual contentions are clearly baseless or the claim is based on an indisputably meritless legal theory. Unreasonable litigation conduct can also render a case exceptional. The prevailing party must establish that a

case is exceptional by a preponderance of the evidence. A showing of bad faith is not a prerequisite for an award of fees.

Where a case involves both Lanham Act and non-Lanham Act claims, the prevailing party is entitled to attorney's fees only for the work expended in litigating the Lanham Act claims. Accordingly, a court must apportion the fees unless the claims are "so inextricably intertwined that even an estimated adjustment would be meaningless."

## IV. ARGUMENT

### 1. Case Exceptionalness

This case is "exceptional" under both prongs of the *Octane Fitness* standard adopted by the Second Circuit. *Sleepy's LLC v. Select Comfort Wholesale Corp.*, 909 F.3d 519, 530 (2d Cir. 2018). First, AFAB's litigating position was substantively and objectively unreasonable from its inception. Second, AFAB litigated this case in an unreasonable manner, culminating in trial testimony that this Court found to be not credible on multiple key points. The totality of these circumstances demonstrates that this case "stands out from others" and warrants an award of fees.

An action is objectively unreasonable when its "factual contentions are clearly baseless." Here, AFAB pursued a counterfeiting claim to trial despite a complete failure of proof, resting its entire case on evidence and testimony that this Court found to be contradictory, not probative, and ultimately not credible.

First, AFAB failed to produce a single piece of credible evidence establishing the features of a "genuine" Maximum Impact canister from the relevant 2019 period. As the Court noted, AFAB "did not introduce a single genuine canister of Maximum Impact that circulated in the stream of commerce or that had all the purported features of 'genuine' Maximum Impact that was in commerce in or around May 2019." Instead, AFAB presented litigation-created demonstratives

and an "Example Canister" from a different time period, with different features, and bearing the name of a fictitious entity. This failure to produce a proper evidentiary baseline made it impossible for AFAB to prove its core claim, rendering its pursuit of the case through trial objectively unreasonable.

Second, the Court found that AFAB's sole witness on counterfeiting, its owner Everett Farr, "was not a credible witness on several key points." The Court specifically doubted Mr. Farr's testimony regarding the supposed anti-counterfeiting measures he implemented after 2015. For example: **Butyl Mercaptan:** The Court found it was "not credible" that AFAB added a "foul-smelling and nausea-inducing substance" to Maximum Impact when the product's sales as a popular inhalant at sex shops continued unabated. **Misspelled Caps:** AFAB's claim that a cap with a misspelling ("Maxiumm Impact") proved counterfeiting was directly contradicted by evidence showing one of AFAB's own products bore the exact same misspelling. **Secret "Crimping":** The claim that genuine canisters had a secret "crimping" pattern was entirely unsubstantiated by any product that had actually circulated in commerce.

Moreover, AFAB's Demonstrative Canisters (AFAB-6)—created by a non-testifying expert years after AFAB claims it ceased manufacturing and never introduced into commerce—failed to provide the evidentiary baseline AFAB needed. As the Court noted, these litigation-created props were "ironically" more similar in dimensions and structural features to the allegedly counterfeit Gopaul Canisters than to AFAB's own Example Canister. The record "lacks a single example of 'genuine' Maximum Impact that entered the stream of commerce and has the 'crimping' Farr identified." Op. at 24. That AFAB proceeded to trial without such evidence further confirms the objective unreasonableness of its position.

A case built entirely on the testimony of a single, interested witness whom the Court deems not credible on the central issues is the epitome of a case with a substantively weak and objectively unreasonable litigating position. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 642 (S.D.N.Y. 2018) (finding case exceptional where party advanced "untenable position" at trial).

AFAB's handling of its own expert witness further demonstrates the unreasonableness of its litigation position. Throughout discovery and pre-trial proceedings, AFAB disclosed and relied upon an expert who physically constructed the Demonstrative Canisters (AFAB-6) in December 2023 and 2024—the only purported evidence of the "crimping" feature central to AFAB's counterfeiting theory. LCI prepared to cross-examine that expert at trial. AFAB then chose not to call the expert as a witness, leaving its litigation-created physical exhibits entirely unsponsored by sworn testimony. Without a testifying expert, AFAB had no authenticated baseline against which the Gopaul Canisters could be compared, and the Court was left with demonstratives it could not credit. Representing to opposing counsel and the Court throughout the litigation that expert testimony would be offered, and then silently withdrawing that witness on the eve of trial, needlessly multiplied LCI's trial preparation costs and is precisely the type of unreasonable litigation conduct that supports an exceptional case finding. *See Manhattan Review LLC v. Yun*, 919 F.3d 149, 153 (2d Cir. 2019) (affirming fee award where plaintiff's litigation conduct was objectively unreasonable).

Moreover, AFAB brought this action for reasons that extend well beyond bad-faith. Courts have examined whether parties are improperly motivated where they assert claims not because of their inherent merit, but rather because the party seeks to knowingly gamble on an unreasonable legal theory in order to achieve a secondary gain. *Agence France Presse v. Morel*, No. 10-CV-

2730 (AJN), 2015 WL 13021413, at *5 (S.D.N.Y. Mar. 23, 2015); *see also RVC Floor Decor, Ltd. v. Floor & Decor Outlets of America, Inc.*, 2021 WL 4134796, at *4 (E.D.N.Y. Aug. 18, 2021).

The record also supports an inference of improper litigation motive, a recognized factor under the totality-of-circumstances analysis. *See Octane Fitness*, 572 U.S. at 554 n.6 (courts may consider "motivation" in assessing exceptionality). Among the relief AFAB sought in this action was an order requiring LCI to indemnify AFAB for its attorney's fees in the parallel state wrongful death action arising from Steven Gopaul's death—the very event that gave rise to this suit. Using federal trademark litigation as a vehicle to shift state-court litigation costs onto a co-defendant is not a cognizable purpose under the Lanham Act and reflects the type of improper motivation that courts have found relevant to the exceptional-case inquiry. Indeed, the Second Circuit has consistently held that trademark litigation pursued for improper purposes constitutes an exceptional case warranting attorney fee awards to prevailing defendants. In *Universal City Studios, Inc. v. Nintendo Co. Ltd.*, 615 F.Supp. 838 (1985), the district court found that "the trademark case alleged by Universal, as recounted above, was initiated for reasons other than a sincere belief in the merits of the underlying claims, and the investigation, or lack thereof, that preceded filing the complaint was designed to avoid discovery of the lack of substance of the complaint." The court concluded that "these factors establish that this case was exceptional within the meaning of 15 U.S.C. § 1117 both because it was initiated in bad faith and because the suit was designed to serve ulterior business motives." *Id.*

AFAB's motivation, combined with the absence of credible evidence supporting their claims, underscores why a fee award is necessary both to compensate LCI and to deter similar conduct; as courts have stated that the attorney's fees provision was designed to "afford protection to defendants 'against unfounded suits brought by trademark owners for harassment and the like.'"

*Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 524 (D.C. Cir. 1985); *see also IMAF, S.p.A. v. J.C. Penney Co.*, 810 F. Supp. 96, 98 (S.D.N.Y. 1992). This protective purpose reflects Congress's recognition that trademark litigation can be weaponized for improper purposes, such as the case here.

**2. <u>AFAB Litigated This Case in an Unreasonable Manner</u>**

Beyond the objective weakness of AFAB's claims, its conduct throughout the litigation further demonstrates that this case is exceptional. Courts in this Circuit routinely award fees where a plaintiff advances an objectively unreasonable position or engages in litigation conduct that unnecessarily multiplies the proceedings. See *Manhattan Review LLC v. Yun*, 919 F.3d 149 (2d Cir. 2019).

Here, AFAB engaged in a pattern of conduct — both before and during trial — that confirms the exceptional nature of this case.

First, AFAB attempted to anchor its counterfeiting theory to a factual narrative that its own principal knew was incomplete. At the pretrial conference, AFAB pressed LCI to stipulate that all manufacturing of Maximum Impact had ceased in late 2019. LCI declined. AFAB nevertheless presented testimony from its principal, Everett Farr, repeating that assertion under oath. That narrative unraveled during trial when Amy Mills testified — and the Court directly questioned Mr. Farr upon redirect — revealing for the first time that AFAB had sold the manufacturing rights to Maximum Impact to a company called ACME, which continued producing and selling the product thereafter. The Court itself noted that it was "highly suspicious that Farr never mentioned" this fact until confronted. Seeking a stipulation to a proposition that AFAB's own principal knew to be misleading — and then repeating that narrative under oath — is not merely aggressive advocacy. It is litigation conduct that independently supports a finding that this case stands outside the norm.

Second, AFAB engaged in a pattern of eleventh-hour witness maneuvering that disrupted the proceedings across both scheduled trial dates. Prior to the originally scheduled January 2025 trial, AFAB announced that its previously disclosed expert — whose work produced the Demonstrative Canisters (AFAB-6) and report (AFAB-4) central to AFAB's counterfeiting theory — would not be called as a witness, leaving those exhibits and the underlying report effectively unsponsored.

On the eve of the first trial date, AFAB's counsel then informed the parties that a federal grand jury investigation in Miami concerned the sale of Maximum Impact and related products, and that AFAB's own witnesses faced potential Fifth Amendment exposure arising from the same conduct underlying this action. AFAB moved to stay both the trial and the case. The January trial date was adjourned.

The disruption continued when AFAB learned that LCI intended to call Amy Mills. AFAB immediately redesignated Ms. Mills as its own witness, only to drop her again one week before the February 2026 trial. As a result, LCI was forced to subpoena Ms. Mills and prepare for a witness AFAB had twice represented it would present. When Ms. Mills ultimately testified, her testimony directly contradicted Mr. Farr's narrative concerning the alleged cessation of manufacturing.

Third, AFAB's unsuccessful attempt to obtain a spoliation inference against LCI underscores the unreasonableness of its litigation position. AFAB sought sanctions based on the alleged destruction of evidence by LCI. Yet AFAB itself failed to produce the most probative evidence necessary to support its own counterfeiting theory: a genuine, in-commerce 2019 Maximum Impact canister against which the Gopaul Canisters could be reliably compared. Pursuing a counterfeiting claim without a credible exemplar while simultaneously seeking

sanctions against the opposing party for an evidentiary gap exemplifies the type of unreasonable litigation conduct that warrants a fee award.

Considering the totality of these circumstances — AFAB's attempt to secure a misleading stipulation, the shifting and disruptive witness designations across two trial settings, the unsupported spoliation arguments, and AFAB's decision to proceed to trial despite the instability of its own factual narrative — this case plainly stands out from the mine-run of trademark disputes. An award of attorneys' fees is therefore appropriate both to compensate LCI for the burden of defending this litigation and to deter similar conduct in future cases.

### 3. **Apportionment: Lanham vs. Non-Lanham Work**

The Second Circuit requires that in cases involving both Lanham Act and non-Lanham Act claims, attorney's fees should be awarded only for work related to the Lanham Act claims, unless the claims are so "inextricably intertwined" that apportionment would be impossible. In this matter, however, apportionment is not required because the case consisted exclusively of a Lanham Act claim.

AFAB's complaint asserted a single cause of action for "Trademark Infringement/False Designation of Origin/False Description/Counterfeiting/Unfair Competition" in violation of 15 U.S.C. §§ 1114 and 1125(A). All of LCI's defensive efforts were therefore necessarily directed at defeating this singular federal claim. The third-party claim LCI brought against VDAN Sales Inc. was entirely derivative of AFAB's Lanham Act claim and part of the overall defense strategy. Because no non-Lanham Act claims were litigated, all fees incurred by LCI are attributable to its successful defense of this exceptional Lanham Act case and are fully recoverable without apportionment.

**4. <u>Reasonable Fees — Lodestar Calculation</u>**

Courts in this Circuit calculate reasonable attorney's fees using the lodestar method, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." LCI requests a total fee award of **$50,437.51**, which represents a reasonable expenditure of time defending against AFAB's baseless claims. This amount is based on the hours and rates for LCI's counsel as detailed in the accompanying Declaration of Natalie Sulimani.

The hourly rates for LCI's counsel are well within the range of fees approved by courts in the Southern District of New York for trademark litigation. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 327 F. Supp. 3d 606, 642 (S.D.N.Y. 2018) (finding rates of $375-540 for partners and $175-430 for associates reasonable). The qualifications and experience of LCI's counsel are detailed in the accompanying declaration of Natalie Sulimani.

The hours expended were reasonable and necessary for the defense of this matter, which proceeded through a full four-day bench trial. The work performed included, inter alia: initial case assessment and pleadings; extensive fact and expert discovery, including numerous depositions; pre-trial motion practice and preparation of the joint pre-trial order; comprehensive trial preparation; the four-day trial; and post-trial submissions. Detailed, contemporaneous time records substantiating the hours worked are attached as Exhibit A to the Declaration of Natalie Sulimani.

In the exercise of billing judgment, LCI's counsel has reviewed all time entries and has written off time that could be perceived as excessive, redundant, or otherwise unnecessary.

Accordingly, LCI respectfully requests that the Court award reasonable attorney's fees calculated by the lodestar method in the total amount of **$50,437.51**.

**5. Costs, Litigation Expenses, and Interest**

In addition to attorney's fees, LCI is entitled to recover its costs as the prevailing party under 15 U.S.C. § 1117(a) and 28 U.S.C. § 1920. LCI seeks an award of costs in the amount of **$3,191.62**.

An itemization of these costs is provided in the accompanying Declaration of Natalie Sulimani and the Bill of Costs. LCI also respectfully requests an award of post-judgment interest on the total amount of fees and costs awarded, pursuant to 28 U.S.C. § 1961.

**6. Plaintiff's Anticipated Defenses**

AFAB will likely argue that its claims were brought in good faith and were not so baseless as to be "exceptional." This argument fails. First, subjective good faith is not the standard; the test is one of *objective unreasonableness*. As this Court's order makes plain, AFAB's case was objectively unreasonable because it was premised entirely on the non-credible testimony of its owner and lacked any probative evidence of either counterfeiting or the features of a genuine product from 2019. Pursuing a case to trial without a single piece of credible evidence on the core element of the claim is the definition of an objectively unreasonable litigating position.

Second, AFAB may contend that losing at trial is not enough to warrant a fee award. While true, that argument ignores *why* AFAB lost. This was not a close case that turned on a nuanced legal issue. It was a case that, as the Court found, was devoid of credible factual support for its central premise. AFAB's conduct, particularly Mr. Farr's "highly suspicious" lack of candor regarding the continued manufacturing of Maximum Impact by ACME, further distinguishes this from a typical case where a plaintiff simply fails to persuade the fact-finder. This conduct rises to the level of unreasonable litigation tactics that independently justify an exceptional finding.

Finally, should AFAB challenge the reasonableness of the fees, the rates requested are consistent with those awarded in this District for similar work, and the hours expended were necessary to defend a case through a multi-day trial.

## V. PRAYER FOR RELIEF

**WHEREFORE**, Defendant Little Chelsea, Inc. respectfully requests that the Court enter an order:

1. Granting LCI's motion for attorney's fees and costs;
2. Awarding LCI reasonable attorney's fees in the amount of **$50,437.51**;
3. Awarding LCI its costs in the amount of **$3,191.62**;
4. Awarding post-judgment interest as provided by law; and,
5. Granting such other and further relief as the Court deems just and proper.

Dated: March 13, 2026

Respectfully submitted,

Natalie Sulimani

Natalie Sulimani, Esq.
150 Broadway, Suite 1703,
New York, NY 10038
(212) 863-9614
natalie@sulimanilawfirm.com
***Attorney for Defendants LCI***