USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/11/2026

AFAB INDUSTRIAL SERVICES, INC.,

Plaintiff,

-against-

LITTLE CHELSEA, INC. d/b/a CHELSEA EXLUSIVE,

Defendant.

LITTLE CHELSEA, INC. d/b/a CHELSEA EXLUSIVE,

Third-Party Plaintiff,

-against-

VDAN SALES INC.,

Third-Party Defendant.

23-CV-03095 (MMG)

**OPINION & ORDER**

The Court incorporates by reference the background and analysis of its March 2, 2026 Opinion and Order following a bench trial in this matter. Therein, the Court found AFAB failed to show that the Maximum Impact canisters found near Stephen Gopaul were counterfeit and so, even assuming LCI had sold those canisters to Stephen Gopaul, AFAB was not entitled to judgment against LCI. The Court also determined LCI had not met its burden of showing VDAN supplied the Maximum Impact that LCI may have sold to Steven Gopaul and thus entered judgment "in favor of VDAN as to LCI's derivative claims against them." Dkt. No. 145 at 33. On March 13, 2026, LCI moved for attorney's fees and costs against AFAB. Dkt. No.

152. On March 19, 2026, VDAN moved for attorney's fees and costs against LCI. Dkt. No. 154. For the following reasons, both motions are DENIED.

**RELEVANT LAW**

The Lanham Act permits the Court to "award reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). An exceptional case is "simply one that stands out from others with respect to [(1)] the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or [(2)] the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)..[1, 2] Determining whether a case is exceptional belies a precise rule or formula. Instead, it entails a case-specific analysis based on the totality of the circumstances. *Id.* Relevant factors include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* n.6; *see Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 764 F. App'x 39, 41 (2d Cir. 2019) (affirming that a district court considering a motion for attorney's fees under the Lanham Act should assess these factors). Objective reasonableness receives substantial weight in this analysis. *Zalewski v. Cicerco Builder Dev., Inc.*, 754 F.3d 95, 108 (2d Cir. 2014). A claim is objectively unreasonable when it has "no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001).

[1] The Supreme Court formulated this definition while describing "exceptional" as it appears in the Patent Act's attorney's fees provision. *Octane Fitness, LLC*, 572 U.S. at 553. The Second Circuit in *Sleepy's LLC v. Select Comfort Wholesale Corp.* held this analysis applies to the Lanham Act's attorney's fees provision, as well. 909 F.3d 519, 530–31 (2d Cir. 2018).

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

**LCI'S MOTION IS DENIED**

LCI argues this case meets both prongs of *Octane Fitness*. First, LCI claims AFAB's litigating position was weak given the paucity of evidence and reliance on Everett Farr, an interested and ultimately non-credible witness. Dkt. No. 145 at 21. Second, LCI claims AFAB prosecuted the litigation in an unreasonable manner, trial was delayed due to an ongoing criminal investigation against AFAB, AFAB repeatedly changed its witness roster shortly before trial, and AFAB made an unsuccessful spoliation motion. Dkt. No. 152 at 8–10.

AFAB's case in chief was not "exceptional" under either *Octane Fitness* prong. Everett Farr was a knowledgeable witness and AFAB introduced numerous exhibits in support of its case. The Court ultimately found Farr non-credible on certain key points, however, diminishing both the weight of his testimony and of the exhibits he authenticated and described. But a court's potential assessment of witness credibility is hard for a litigant to evaluate *ex ante*. Furthermore, several facts—including the designation of a non-AFAB manufacturer on the Maximum Impact canister found near Steven Gopaul and LCI's destruction of its Maximum Impact stock on notice of the Gopaul lawsuit—support AFAB's reasonableness in bringing this lawsuit. Next, the manner in which AFAB prosecuted its case was not exceptionally unreasonable. True, AFAB did make last minute changes to its witness roster, requiring the Court's intervention. But those changes did not render this case exceptional within the guidance of *Octane Fitness*. Furthermore, the Court also fielded several last-minute requests from LCI, including leave for counsel to serve as an interpreter for its key witness (a clearly unacceptable request). LCI also highlights that trial was previously delayed at the last moment due to a pending government investigation into AFAB. This argument ignores that AFAB could not control the timing of the Government's investigation, nor when AFAB became aware of that

investigation. The Court would also be remiss not to mention that, shortly before the second trial date, LCI's counsel moved for an extension due to a back injury that had existed for several months, prompting the Court to adjourn the trial date a second time. Dkt. No. 125; Dkt. No. 129.

The other *Octane Fitness* factors likewise do not support LCI's motion. The litigation was by no means frivolous. AFAB had a good faith belief that Steven Gopaul purchased the canisters at LCI. And there was at least some reason to believe the canisters were counterfeit because, *inter alia*, the listed manufacturer was not AFAB. The claim was not "objectively unreasonable" because it had *some* legal and factual support, albeit not enough for AFAB to meet its burden of proof following a trial on the merits. There is also no special need in this case to advance considerations of compensation and deterrence. LCI may have benefited from AFAB bringing this action given its implications for the pending State court action. The illicit nature of the products LCI was selling also weighs against compensating LCI for its costs stemming from those sales, such as attorney's fees..[3] Last, LCI argues AFAB brought this action solely to shift liability in the Gopaul Action. Admittedly, this purpose does not align with the policies animating the Lanham Act, but (even accepting LCI's arguments as true) it does not alone merit attorney's fees in light of all the other circumstances of this case.

**VDAN'S MOTION IS DENIED**

VDAN moves for attorney's fees and costs as well. VDAN did not brief its motion under *Octane Fitness* and instead cites precedent that a court may award attorney's fees to a successful party whose opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."

---

[3] Upon notice of the Gopaul lawsuit, LCI's employees threw out not only Maximum Impact but also "related" products such as an item called "Rush." The logical grouping of these products is that they were all poppers. Although the Gopaul lawsuit mentioned Maximum Impact, only, LCI nevertheless threw out all of these products, showing it was aware of how customers used them. The Court's trial decision references the potential danger of these products, including explicit warnings by public health officials about them.

Dkt. No. 154 at 2 (quoting *Hall v. Cole*, 412 U.S. 1, 5 (1973)). LCI acted in bad faith, VDAN argues, because LCI maintained for years it sourced Maximum Impact exclusively from VDAN before finally revealing after the close of fact discovery it had a second supplier: E&A Video. VDAN contends the belated disclosure forced it to litigate this action and the State action for a year-and-half under the false assumption it was LCI's sole supplier. VDAN also contends that LCI's belated disclosure deprived it of the chance to move for summary judgment and required it to hastily change its trial strategy..[4]

The "American Rule" provides that a "prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," barring a statutory or common law exception. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). VDAN's motion invokes one such common law exception, permitting a court to award attorney's fees to a prevailing party whose opponent acted in bad faith. *See id.* at 258–59; *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 124 (2d Cir. 2013)..[5] Little caselaw exists on how to apply this common law exception in the context of attorney's fees. But a finding of bad faith ordinarily requires "clear evidence that the conduct at issue is . . . motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009); *see also Int'l Technologies Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 367–68 (2d Cir. 2021)

[4] VDAN does not argue the Court should award attorney's fees under its inherent power. In its reply brief, VDAN does argue it meets the *Octane Fitness* standard for an award of attorney's fees under the Lanham Act. But the Court will not consider an argument raised for the first time in a reply brief. *Peterson v. Islamic Republic of Iran*, 876 F.3d 63, 79 (2d. Cir. 2017). Even were it to consider the argument, the *Octane Fitness* factors do not support an award. LCI's claim was neither frivolous nor objectively unreasonable. VDAN does not argue LCI had an improper motivation. And the Court sees no need to compensate VDAN given its role in the illicit business central to this lawsuit.

[5] A court may also award attorney's fees as a sanction under its inherent power to sanction bad-faith conduct. *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995).

(explaining that monetary sanctions for "bad faith" require that the acts or actions be taken for "oppressive reasons" and improper purposes).

Fatal to VDAN's motion, it offers no evidence or compelling arguments that LCI acted in bad faith. Instead, and based on the Court's first-hand observation of the LCI witnesses, it appears LCI's witnesses (who were also responsible for LCI's discovery productions) genuinely forgot about their second supplier. VDAN questioned the witnesses at length on this issue. Their answers, while flummoxing, appeared sincere. Furthermore, outside events did not force LCI to disclose the existence of E&A Video. Instead, LCI's owner, Mr. Ohana, did so at a deposition upon further reflection. Finally, VDAN points to no strategic advantage LCI would have gained by hiding its second supplier. Nor is the Court aware of any reason why LCI would have deliberately concealed the second supplier, as that information had no effect on LCI's litigation position and there is no relationship between LCI and E&A Video that would support a claim of collusion or intentional concealment. If anything, LCI would have benefitted from impleading a second third-party whom LCI could argue was vicariously liable if LCI had been found liable.

As VDAN has not shown LCI acted in bad faith, the Court will not award VDAN attorney's fees under the bad faith exception to the American Rule.

## CONCLUSION

For the foregoing reasons, LCI's motion for attorney's fees (Dkt. No. 152) and VDAN's motion for attorney's fees (Dkt. No. 154) are DENIED.

Dated: September 11, 2026
New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge